# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 21, 2008

Charles R. Fulbruge III
Clerk

No. 07-10729

JIMMY WHITT,
Individually and as Personal Representative of
the Estate of Jamie Earl Whitt, Deceased,

                                        Plaintiff-Appellant,

v.

STEPHENS COUNTY;
JAMES REEVES, Sheriff of Stephens County,
Individually and in His Official Capacity; and
JOHN DOES NOS. 1-5,

                                        Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Texas

Before SMITH and PRADO, Circuit Judges, and YEAKEL, District Judge.[*]

JERRY E. SMITH, Circuit Judge:

---

[*] District Judge of the Western District of Texas, sitting by designation.

No. 07-10729

Jimmy Whitt[1] sued Stephens County, Sheriff James Reeves, and five un-identified jailers and emergency personnel under 42 U.S.C. § 1983 for allegedly causing or failing to prevent the jailhouse death of his son, Jamie Earl Whitt. We affirm the summary judgment.

I.

Shortly after noon one day in April 2004, police officers arrested 23-year-old Jamie Whitt on three misdemeanor charges and took him to the Stephens County Jail. Around 7:00 p.m., Whitt was found dead, hanging by a belt from the ceiling of his cell. What had happened during those seven hours remains a disquieting mystery.

Summary judgment evidence reveals the following: Jailer James Kyle Buse, Jr., booked Whitt at the jail just before 2:00 p.m. Buse inventoried the items and clothing in Whitt's possession and, notably, did not list a belt among the items. As part of the booking process, Buse administered a mental health questionnaire. Whitt answered "no" to almost all the questions, including whether he had ever attempted suicide or had suicidal thoughts. He did, however, answer "yes" to the question "Have you experienced a recent loss or death of a family member or friend or are you worried about major problems other than your legal situation?" Contrary to protocol, Buse did not report that answer to supervisors, and he assigned Whitt to a general holding cell.[2]

---

[1] Jimmy Whitt filed his action individually and on behalf of the estate of his son, Jamie Earl Whitt. For ease of exposition, we refer to Jimmy Whitt as the "plaintiff."

[2] The Texas Commission on Jail Standards has promulgated specific procedures for classifying detainees' mental health needs. 37 TEX. ADMIN. CODE § 271.1(a), (b)(1). Reeves developed a suicide prevention plan for the jail that complied with the requirements. Although
(continued...)

Jailer Freda Lewing recorded, in her log book, hourly observations of Whitt's holding cell between 2:00 p.m. and 6:00 p.m. She also stated that some time between 3:30 p.m. and 4:00 p.m., Whitt asked for something to eat. Another jailer, Johnny Ponce, stated that he observed Whitt standing in his cell at about 4:15 p.m. and that nothing appeared to be amiss.

Some time between 5:00 p.m. and 7:00 p.m., inmate Dedra Burns heard noises from Whitt's area of the jail, particularly something about "Rose," the name of Whitt's deceased mother. She also recalled hearing, "Leave me alone. Stop. Leave me alone," as well as "a bunch of SS sounds like they was slamming the mats around" and noises "like grunting." Another inmate, Charles Oliver, stated that he "heard a bang in [Whitt's] cell" around 6:00 p.m.

A jail surveillance camera in the hallway outside Whitt's cell should have recorded what had happened in the vicinity of the cell. But curiously SS and more than a little troublingly SS the only available copy of the surveillance recording contains several "greenout" periods during which the counter progresses but the screen displays solid green or solid white.[3] The crucial moments cannot be seen on the tape. Reeves claims these key portions vanished when the tape was copied at the sheriff's office. The original of the tape has not been produced.

At around 7:00 p.m., jailer Johnny Ponce found Whitt hanging by a belt from a pipe on the ceiling of Whitt's cell. Although Whitt weighed 290 pounds and was six feet tall, the belt from which he hung was only thirty-seven inches

---

[2] (...continued)
the plan entailed formal training for jail employees, Reeves admitted that no formal training in suicide prevention had been provided.

[3] More curiously still, the county and Reeves did not produce any viewable copy of the recording for several months, despite repeated requests.

long.

Ponce called for Lewing and two trustees, Michael Jackson and Billy Reynolds, to cut Whitt loose. According to his testimony, Ponce assumed Whitt was dead, though he did not check Whitt's pulse. No one tried to resuscitate Whitt. Sheriff Reeves was notified, and an ambulance was called. Reeves had been in his office on the first floor of the courthouse building and, on being summoned, entered the fourth-floor jail for the first time that day.

Shortly thereafter, emergency medical technicians ("EMT's") Jody Jenkins and Bryson Kanady arrived and found Whitt's body lying on its side. They advised Reeves that Whitt had no signs of life, and Reeves executed on behalf of Whitt a "refusal of service" form releasing the EMT's of further responsibility.[4] A justice of the peace pronounced Whitt dead. The medical examiner determined that the cause of death was "hanging . . . consistent with suicide" and testified that Whitt's body did not show signs of bruising or other such injuries. Whitt, however, claims photos taken at the funeral home show bruising.

Plaintiff sued in February 2006, naming as defendants Stephens County, Reeves in his individual and official capacities, and five "John Does" identified as "agents and/or employees of the Stephens County Sheriff's Office." Plaintiff offers two theories of Whitt's deathSSthat Whitt was "harassed, ridiculed, threatened, assaulted, attacked, beaten, and/or tortured" by his jailers, or alternatively, that he committed suicide on account of the jailers' negligence and deliberate indifference. The action stated claims under 42 U.S.C. § 1983, involving due process and Eighth Amendment violations, and claims under state law.

---

[4] The EMT's described Whitt's body as "pulseless, apnic, cyanotic [with] obvious signs of lividity [and] early signs of rigor mortis."

Based on qualified immunity, the district court granted summary judgment for any suicide-related liability to the John Does and to Reeves in his individual capacity but denied summary judgment to the county, to Reeves in his official capacity, and to the individual defendants for harassment-related liability. We affirmed.[5]

In March 2007, plaintiff moved to amend his complaint to identify the "John Does" as Buse, Lewing, Ponce, and EMT's Jenkins and Kanady. The district court denied leave to amend, then granted summary judgment to the John Does because the statute of limitations barred recovery from any defendants named in their place and to the county and Reeves because there was insufficient evidence to support liability against them on the harassment or suicide theories. The court denied summary judgment on Whitt's state-law claims, because it declined to exercise supplemental jurisdiction over those claims in light of the dismissal of the federal claims over which it had original jurisdiction. Plaintiff appeals the summary judgment on the federal claims.

## II.

We review a summary judgment de novo. Bush v. Strain, 513 F.3d 492, 497 (5th Cir. 2008). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c) (as amended eff. Dec. 1, 2007). Although we draw all justifiable inferences in the light most favorable to the non-moving party, the non-movant must present sufficient evidence on

---

[5] Whitt v. Stephens County, 236 F. App'x 900 (5th Cir. 2007).

which a jury could find in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).

### III.

### A.

Whitt appeals the denial of leave to amend the complaint to name the five "John Does" and the summary judgment for the John Does. The district court held that Whitt's motion for leave to amend was unduly delayed, would cause prejudice to the defendants, and would have been futile because the statute of limitations barred actions against the named defendants. The court dismissed as untimely Whitt's federal claims against the John Does.

We need not consider whether the court abused its discretion in denying leave to amend based on undue delay and prejudice, because we agree with that court that the statute of limitations rendered amendment of the complaint futile. The limitations period for a § 1983 action is determined by the state's personal injury limitations period, Jacobsen v. Osborne, 133 F.3d 315, 319 (5th Cir. 1998), which in Texas is two years, TEX. CIV. PRAC. & REM. CODE ANN. § 16.003. The incident occurred in April 2004, more than two years before Whitt sought to name the John Doe defendants in the March 2007 motion to amend.

The claims against the named defendants are thus time-barred unless they "relate back" to the original filing of the complaint per Federal Rule of Civil Procedure 15(c).[6] We have held, however, that an amendment to substitute a

---

[6] Rule 15(c)(1), as amended December 1, 2007, states,

(1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:

(continued...)

named party for a John Doe does not relate back under rule 15(c). Jacobsen, 133 F.3d at 320-21 (reasoning that rule 15(c) requires a "mistake concerning the identity of the proper party" and that use of a John Doe moniker does not constitute a "mistake"). Accordingly, because Whitt's claims against the named defendants are time-barred, it would have been futile for Whitt to amend, so the district court appropriately denied the motion to amend.[7] Furthermore, and relatedly, the court properly granted summary judgment to the John Does, because any claims against parties named in their place would be barred by limitations.

---

[6] (...continued)

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

[7] Whitt's counsel explains that delay in amending the complaint was caused by counsel's incapacitating medical condition and hospitalization. Though such circumstances might bear on a finding of excusable neglect in missing a court's filing deadline, see, e.g., Raymond v. Univ. of Houston, No. 07-20357, ___ F. App'x ___, 2008 U.S. App. LEXIS 9268, at *3-*5 (5th Cir. Apr. 29, 2008) (per curiam), "neither 'excusable neglect' nor ignorance of the law is sufficient to justify equitable tolling" of limitations. Fierro v. Cockrell, 294 F.3d 674, 682 (5th Cir. 2002).

B.

Whitt appeals the summary judgment to the county and Reeves on the harassment- and suicide-related theories of liability.  Summary judgment was proper.

Even construing the summary judgment evidence in the light most favorable to Whitt, no reasonable jury could conclude that Reeves personally "harassed, ridiculed, threatened, assaulted, attacked, beat, and/or tortured" Whitt.  According to uncontroverted testimony, Reeves was not present at the jail on the day of the incident until after Whitt was found hanging around 7:00 o'clock, at which point Reeves was summoned by the jailers.  Whitt has presented no evidence to suggest otherwise, much less any specific evidence that Reeves had a hand in Whitt's death.[8]  Furthermore, no reasonable jury could conclude that, on arriving at the jail, Reeves acted with "deliberate indifference" in failing to resuscitate or in refusing further medical care.[9]  The evidence suggests that Whitt was assumed to be dead and that the EMT's, on arrival, informed Reeves that Whitt had no signs of life.

Nor may the county properly be a defendant on Whitt's harassment theory or on the alternative theory that individual jailers or EMT's failed to resuscitate Whitt.  A "municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue," for example, by establishing an unconstitutional policy or custom.  City of Canton v. Harris, 489 U.S.

---

[8] At summary judgment, "once the moving party has properly supported his summary judgment motion, the nonmoving party must rebut with 'significant probative' evidence." Ferguson v. Nat'l Broad. Co., 584 F.2d 111, 114 (5th Cir. 1978).

[9] Liability will not attach "unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996) (en banc).

378, 385 (1989). Because "[r]espondeat superior or vicarious liability will not attach under § 1983," the county cannot be vicariously liable for the alleged actions of its jailers or EMT's. Id.

Although a county could be held liable for failure to adopt adequate policies and procedures or to train employees in those procedures, no jury could conclude that Whitt posed an obvious risk of suicide such that the county acted with deliberate indifference. A county's failure to train officers in appropriate procedures supports § 1983 liability "only where the failure to train amounts to a deliberate indifference to the rights of persons with whom the [officers] come into contact." Harris, 489 U.S. at 388.

In the specific context of prison suicide prevention, municipalities must provide custodial officials with "minimal training to detect 'obvious medical needs of detainees with known, demonstrable, and serious medical disorders,'" but a "failure to train custodial officials in screening procedures to detect latent suicidal tendencies does not rise to the level of a constitutional violation." Evans v. City of Marlin, 986 F.2d 104, 107-08 (5th Cir. 1993) (quoting Burns v. City of Galveston, 905 F.2d 100 (5th Cir. 1990)). In the absence of "manifest signs" of suicidal tendencies, a city may not be held liable for a detainee's suicide in a § 1983 suit based on a failure to train. Id. at 108.[10]

Plaintiff points to evidence that, as we have mentioned, Whitt answered "yes" to a question on a mental health questionnaire asking whether he had ex-

---

[10] See also Burns v. City of Galveston, 905 F.2d 100, 104 (5th Cir. 1990) ("Failure to train police officers in screening procedures geared toward detection of detainees with suicidal tendencies may rise to the level of a constitutional deprivation only if the right of detainees to adequate medical care includes an absolute right to psychological screening. We perceive no such right.").

perienced a recent loss or death of a family member or friend or was worried about major problems other than his legal situation. In response to specific questions from Buse, however, Whitt also said he was not thinking about killing himself, had never thought about doing so, and had never been so "down" or depressed that he could not do anything for more than a week. In light of those answers, no jury reasonably could conclude that Whitt's risk of suicide was sufficiently "obvious," "known," "demonstrable," or "manifest" to establish a constitutional violation. Although Buse might have been negligent in concluding Whitt was not a suicide risk, and Buse might not have fully complied with jail procedures, such negligence and noncompliance do not constitute deliberate indifference. Id.

Whitt contends he is entitled to a spoliation inference, because, he contends, defendants destroyed evidence in bad faith by causing the "greenouts" on the prison surveillance camera. Under the spoliation doctrine, a jury may draw an adverse inference "that a party who intentionally destroys important evidence in bad faith did so because the contents of those documents were unfavorable to that party." Russell v. Univ. of Tex., 234 F. App'x 195, 207 (5th Cir. 2007); see also Vick v. Tex. Employment Comm'n, 514 F.2d 734, 737 (5th Cir. 1975).

Even if we were to find bad faith and apply a spoliation inference, such inference would not substantially bolster the case against Reeves or the county. Even with that inference, the summary judgment evidence shows that Reeves was not present at the jail before Whitt died. Nor would the inference be relevant to significant issues of material fact against the county; it would not permit a jury to conclude that the county was deliberately indifferent in failing to train

or supervise its employees.

At least one circuit has opined that "[i]n borderline cases, an inference of spoliation, in combination with some (not insubstantial) evidence for the plaintiff's cause of action, can allow the plaintiff to survive summary judgment."[11] Here, however, the case against Reeves and the county, based on the summary judgment evidence, is not borderline. But for the spoliation inference, there is little other substantial summary judgment evidence of liability against those defendants. Although a spoliation inference might be more helpful in claims against the individual jailers, whose actions remain in doubt and would have been recorded on the video, limitations bars Whitt's claims against them.

## IV.

It is not without discomfort that we affirm the summary judgment, because the facts now in the record are suspicious. Although there remains considerable mystery about what may have happened to Whitt at the hands of his jailers, they were not properly named as defendants within the requisite statutory time period, and the claims against Reeves and the county do not suffice in their stead.

The summary judgment is AFFIRMED. Because plaintiff is not the prevailing party, his request for attorney's fees is DENIED.

---

[11] Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 107 (2d Cir. 2001) (quotation omitted); see also Kronisch v. United States, 150 F.3d 112, 128 (2d Cir. 1998) ("We do not suggest that the destruction of evidence, standing alone, is enough to allow a party who has produced no evidenceSSor utterly inadequate evidenceSSin support of a given claim to survive summary judgment on that claim.").