REVISED MARCH 16, 2009
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 23, 2009

Charles R. Fulbruge III
Clerk

No. 08-30804
Summary Calendar

ORECK DIRECT LLC

Plaintiff - Appellant

v.

DYSON INC.

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before JOLLY, BENAVIDES, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

Oreck Direct, LLC ("Oreck") appeals from the district court's grant of summary judgment in favor of Dyson, Inc. ("Dyson"). We AFFIRM.

I.

On February 10, 2005, Oreck filed a false advertising claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (2006), and the Louisiana Unfair Trade Practices Act ( the "LUTPA"), LA. REV. STAT. ANN. § 51:1405 (2008), in the Eastern District of Louisiana against Dyson, one of its major competitors in the vacuum cleaner industry. In this first suit ("Oreck I"), Oreck alleged that Dyson falsely advertised that its vacuum cleaners do not lose suction; by supplemental

complaint, additional claims of false advertising were raised. Oreck did not limit its claims to representations about specific Dyson vacuum cleaner models or to specific modes of advertising or promotion. Oreck and Dyson eventually decided to settle Oreck I. They signed a binding term sheet,[1] which ultimately was to be replaced by a complete written settlement agreement, and they entered a joint motion to dismiss that advised the district court that they had settled their dispute. On January 10, 2007, the district court dismissed Oreck I with prejudice. The court's order did not incorporate by reference the parties' term sheet, and it did not include any language limiting its scope. The parties negotiated and executed a Settlement Agreement and Mutual Release ("Settlement Agreement") on February 28, 2007.

On May 1, 2007, Oreck filed another false advertising complaint against Dyson in the Eastern District of Louisiana alleging that Dyson's "no loss of suction" and "most powerful lightweight" representations regarding its DC18 model were false and deceptive in violation of § 43(a) of the Lanham Act and LUTPA. Dyson moved to dismiss, or alternatively, for summary judgment. The district court granted summary judgment in favor of Dyson, finding that the claims in Oreck's present action were part of the same series of transactions at issue in Oreck I and therefore barred by res judicata.

Oreck sought reconsideration from the district court on March 3, 2008, arguing that the district court failed to consider in its res judicata analysis the parties' subjective intent as reflected in the Settlement Agreement. The district court denied Oreck's motion to reconsider, finding no manifest error in its decision to apply traditional res judicata analysis. The district court noted that

---

[1] In the term sheet, the parties agreed to (1) "dismiss their respective claims with prejudice, and without costs" and (2) "provide full and complete releases for all advertising . . . claims arising out of, and related to, the claims in the litigation."

even if it had considered the terms of the Settlement Agreement, the outcome of the case would have been the same. Oreck appeals.

## II.

We review a district court's grant of summary judgment de novo. Whitt v. Stephens County, 529 F.3d 278, 282 (5th Cir. 2008). "Summary judgment is appropriate where 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" Id. (quoting FED. R. CIV. P. 56(c) (as amended eff. Dec. 1, 2007)). "The res judicata effect of a prior judgment is a question of law that we review de novo." Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 313 (5th Cir. 2004).

## III.

"Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Allen v. McCurry, 449 U.S. 90, 94 (1980). Res judicata "insures the finality of judgments and thereby conserves judicial resources and protects litigants from multiple lawsuits." United States v. Shanbaum, 10 F.3d 305, 310 (5th Cir. 1994). Res judicata prevents a later suit, such as this one, from collaterally attacking a prior judgment by a court of competent jurisdiction. See In the Matter of Williams, 298 F.3d 458, 461 (5th Cir. 2002) (prior final order cannot be collaterally attacked). Four elements must be met for a claim to be barred by res judicata: "(1) the parties must be identical in the two actions; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and (4) the same claim or cause of action must be involved in both cases." In re Ark-La-Tex Timber Co., 482 F.3d 319, 330 (5th Cir. 2007).

In the present case, the first three elements of res judicata are not in dispute: the parties in Oreck I and the present case are identical, the judgment

in Oreck I was rendered by a court of competent jurisdiction, and the district court's dismissal of the case with prejudice was a final judgment on the merits. See Fernandez-Montes v. Allies Pilots Ass'n, 987 F.2d 278, 284 n.8 (5th Cir. 1993) ("A dismissal which is designated 'with prejudice' is 'normally an adjudication on the merits for purposes of res judicata.'" (citation omitted)); see also In re W. Tex. Mktg. Corp., 12 F.3d 497, 500 (5th Cir. 1994) ("[T]his [C]ourt has long recognized that a consent judgment is a judgment on the merits, and is normally given the finality accorded under the rules of claim preclusion." (internal quotation marks and citations omitted)).[2] The parties only dispute whether the fourth element is satisfied.

In determining whether the fourth element was satisfied, the district court applied the "transactional test," which "requires that the two actions be based on the same 'nucleus of operative facts.'" Ark-La-Tex, 482 F.3d at 330 (quoting Eubanks v. FDIC, 977 F.2d 166, 171 (5th Cir. 1992)). "[A] prior judgment's preclusive effect extends to all rights of the plaintiff 'with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] transaction arose.'" Davis, 383 F.3d at 313 (quoting Petro-Hunt, LLC v. United States, 365 F.3d 385, 395-96 (5th Cir. 2004)). What constitutes a "transaction" or a "series of transactions" is determined by weighing various factors such as "'whether the facts are related in time, space, origin, or motivation[;] whether they form a convenient trial unit[;] and whether their treatment as a unit conforms to the parties' expectations or business

---

[2] An exception to this general rule exists for jurisdictional dismissals, which are "insufficient to serve as final judgments on the merits for res judicata purposes." Miller v. Nationwide Life Ins. Co., No. 06-31178, 2008 WL 3086783, at *5 (5th Cir. Aug. 6, 2008) (citing Darlak v. Bobear, 814 F.2d 1055, 1064 (5th Cir. 1987) (holding that a dismissal under the Eleventh Amendment is not "on the merits" for res judicata purposes); Nilsen v. City of Moss Point, 701 F.2d 556, 562 (5th Cir. 1983) (en banc) (holding, in a res judicata context, that "[d]ismissals for want of jurisdiction are not decisions on the merits . . . .")). This exception does not apply to the present case.

understanding or usage.'" Davis, 383 F.3d at 313 (quoting Petro-Hunt, 365 F.3d at 395-96).

Oreck challenges the district court's analysis of the fourth element as error. Oreck contends that the district court should have abandoned the transactional test entirely and determined the scope of res judicata by the parties' actual intentions as reflected in the Settlement Agreement. There is no authority from this circuit supporting Oreck's position,[3] especially since the final judgment in Oreck I simply dismissed the case with prejudice without incorporating the Settlement Agreement , the terms of which were finalized after the consent judgment was entered, or any express reservations. See Hospitality House, Inc. v. Gilbert, 298 F.3d 424, 430 (5th Cir. 2002) (explaining that a district court may make a settlement agreement part of its dismissal order "'either by separate provision (such as a provision retaining jurisdiction over the settlement agreement) or by incorporating the terms of the settlement agreement in the order.'" (quoting Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 380-81 (1994)). "The judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order." Kokkonen, 511 U.S. at 381.

---

[3] Oreck misapplies precedent from this circuit in its brief. For example, Kaspar Wire Works, Inc. v. Leco Eng'g & Machine, Inc., 575 F.2d 530, 532 (5th Cir. 1978), addresses the question of the res judicata effect of a dismissal with prejudice in a declaratory judgment action (not the case here) and the question of collateral estoppel, or issue preclusion, following a consent decree. Similarly, Fin. Acquisition Partners, LP v. Blackwell, 440 F.3d 278, 284 (5th Cir. 2006), and Hughes v. Santa Fe Int'l Corp., 847 F.2d 239, 241 (5th Cir. 1988), address issue, not claim, preclusion. In Liberto v. D.F. Stauffer Biscuit Co., 441 F.3d 318, 327 (5th Cir. 2006), the consent judgment expressly incorporated a vague and inconclusive settlement agreement. Thus, of necessity, the court had to look at the settlement agreement and concluded: "the language of the Settlement Agreement is, at best, inconclusive, offering little support for finding that incorporating it into an agreed judgment gave it any preclusive teeth." Id. FDIC v. Brants, 2 F.3d 147, 149 (5th Cir. 1993), is a case specifically about a settlement agreement, not the preclusive effect of a judgment.

Cases Oreck cites from other circuits are not contrary. See Norfolk S. Corp. v. Chevron USA, Inc., 371 F.3d 1285, 1291 (11th Cir. 2004) (parties can waive later res judicata defense by using an "exclusive list" of claims subject to release in their settlement agreement);[4] Keith v. Aldridge, 900 F.2d 736, 740 (4th Cir. 1990) ("The law does recognize an exception to the normal application of claim preclusion principles when the parties have agreed to the splitting of a single claim. 'Express agreement' between the parties that litigation of one part of a claim will not preclude a second suit on another part of the same claim is normally honored by the courts.").[5] Thus, the district court did not err by applying the transactional test in determining whether the fourth element of res judicata was satisfied.

Oreck argues that even if the transaction test is the proper test, the district court should not have granted summary judgment for Dyson because a genuine issue of material fact existed as to whether the false advertising claims in the present case concerning the DC18 are the same as those involved in Oreck I. We disagree. In Oreck I, Oreck alleged the same causes of action (false advertising under § 43(a) of the Lanham Act and violation of the LUTPA) as it alleges here and launched a broad attack against false advertisements used to promote "Dyson vacuum cleaners." Oreck did not limit its claims to particular Dyson models. Furthermore, Dyson was advertising the DC18 to retailers during the pendency of Oreck I and using the "no loss of suction" representations Oreck then alleged to be false. On November 29, 2006, Target agreed to

---

[4] It is unnecessary in this case for us to determine whether we agree with the reasoning in Norfolk. Even if we applied its holding to this case, it would not change the outcome. Unlike the parties in Norfolk, the parties here did not make an "exclusive list" of matters settled thus carving out other claims for another day. Instead, Oreck expressly gave Dyson a "full and complete release[] from all advertising and patent claims arising out of, and related to, the claims in the Action." Such a broad release cannot be read as an "exclusive list." See also infra note 8.

[5] We find no such "express agreement" to split a claim in this case.

purchase a significant number of DC18 vacuums, and throughout late November and early December 2006, Sears, Bed Bath & Beyond, and Circuit City all forecasted purchasing thousands of DC18 vacuums.[6]

No evidence was presented that fraud or misrepresentation by Dyson prevented Oreck from challenging the DC18 in Oreck I; indeed Dyson produced information concerning the DC18 (then labeled as the "N70") during discovery. See RESTATEMENT (SECOND) OF JUDGMENTS, § 26, cmt. j (articulating an exception to the general rule of res judicata in cases of fraud or misrepresentation by defendant). Because Oreck's claims concerning the DC18 "'could have been advanced in support of the cause[s] of action [in Oreck I,]'" res judicata bars Oreck's present suit. Davis, 383 F.3d at 314 (quoting Nilsen, 701 F.2d at 560) (emphasis in original)).

Like the district court, we find no merit in Oreck's contention that the same claims are not involved because, at the time of Oreck I, the DC18 was only being promoted to retailers, not advertised and sold to individual consumers. See Seven-Up Co. v. Coca-Cola Co., 86 F.3d 1379, 1385 (5th Cir. 1996) ("[N]othing in the language of §43(a) [of the Lanham Act] specifically requires a false representation be intended to influence the ultimate consumer, whoever that might be." (emphasis in original) (internal quotation marks and citation omitted)). Also, we find no merit in Oreck's contention that the instant claims were not the same as those in Oreck I because Oreck now challenges Dyson's "no loss of suction" representations and its "most powerful lightweight"

---

[6] Oreck submits that, at the time of Oreck I, it would have lacked standing to challenge Dyson's advertising of the DC18 to retailers because its injury would have been too speculative. However, as the district court correctly noted in its opinion, the record indicates overlap in the retailers used by Oreck and Dyson to market and sell their vacuum cleaners (Bed Bath & Beyond, for example). To the extent Oreck and Dyson are direct competitors for shelf space, any false advertising claims by Dyson would have likely influenced retailers to place Dyson's product in the marketplace rather than Oreck's. Thus, we agree with the district court that this argument is without merit.

representations. Both advertisements were being used by Dyson during Oreck I to promote the DC18 to national retailers. Had Oreck properly included the DC18 in its first suit, Dyson's "most powerful lightweight" representations would have likewise been included.[7]

At bottom, Oreck's false advertising claims concerning the DC18 – both the "no loss of suction" claim and the "most powerful lightweight" claim – arise from the same series of transactions from which Oreck I arose. Consequently, we agree with the district court's holding that these claims are barred by res judicata.[8]

AFFIRMED.

---

[7] Indeed, Oreck did exactly this during Oreck I, supplementing its Complaint as Dyson made new advertising claims related to its vacuum cleaner models. Specifically, Oreck added claims that Dyson had engaged in more false advertising by making statements that: "Vacuums don't work effectively. Dyson does."; and that Dyson's vacuums have "no extra costs" and "no maintenance costs."

[8] We likewise agree with the district court's analysis in its order denying Oreck's request for reconsideration that even if the terms of the Settlement Agreement had dictated the scope of the res judicata analysis, Dyson would still prevail. The Settlement Agreement released Dyson from all advertising claims arising out of, and related to, the claims in Oreck I; consented to the dismissal of Oreck's claims with prejudice; and allowed Dyson to use the contested advertising claims for all products existing in the United States marketplace as of January 5, 2007. The DC18 was being advertised to numerous United States retailers as of January 5, 2007, and as stated in our opinion, this constituted "exist[ing] in the United States marketplace." All false advertising claims pertaining to the DC18 and arising out of or related to the claims in Oreck I were thereby released. We disagree with Oreck's suggestion that its second lawsuit involves something that was a "future claim" at the time of the Settlement Agreement. Instead, it was an existing claim.