NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0117n.06

Case No. 15-5689

FILED
Mar 01, 2016
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| George Vincent Vaughn, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| Konecranes, Inc., | ) | KENTUCKY |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| _____ | ) | |

**Before: Merritt, Gibbons, and McKeague, Circuit Judges.**

**MERRITT, Circuit Judge.** The essential question is one of causation in this diversity action arising out of an accident on a job site in Paris, Kentucky. The case is very fact-intensive. Plaintiff, George Vaughn, was injured when an overhead crane moved a piece of equipment on which plaintiff was working, pinning his foot. Plaintiff contends that defendant Konecranes, Inc. was negligent in repairing and maintaining the crane and other equipment, specifically the radio system used to maneuver the crane. Because plaintiff did not produce any evidence that Konecranes' negligence was the proximate cause of the accident, we affirm the district court's grant of summary judgment to Konecranes.

## I.

Plaintiff is a 14-year employee at Central Motor Wheel of America, Inc., in Paris, Kentucky. Central Motor Wheel produces automotive parts such as aluminum wheels. On May 8, 2012, plaintiff and a coworker, Mr. Bashaw, were performing maintenance on die sets. The die sets are comprised of top and bottom parts that fit together, between which sheets of metal are inserted to press out forms. The die set is attached to a crane with an attached hoist and trolley, allowing it to move the set horizontally or vertically.[1] Plaintiff used a radio remote transmitter[2] to lift the top half of a die set off of the bottom half so that he could inspect the surfaces and tighten the components of the die set. After inspection, the top half would be lowered to the bottom half and bolster pins located in the top half would align with the guides in the bottom half for reassembly.[3]

Plaintiff and Bashaw were on opposite sides of the die set. Plaintiff had set the radio remote on an adjacent die set while he was working on the die set involved in the accident. Bashaw was manually steadying the top half of the die set to assist plaintiff. The evidence is in dispute as to whether plaintiff handed the radio remote to Bashaw or Bashaw retrieved it from

---

[1] The "bridge" is that part of an overhead crane consisting of girders, trucks, end ties, walkway and drive mechanism that carries the trolley and travels in a direction parallel to the floor. The hoist is the part of the crane that lifts the load vertically off the floor.

[2] The radio system controlling the crane is comprised of a transmitter and a receiver. The transmitter resides within the remote operated by a person on the ground. The receiver is located on the crane bridge 40 feet above the floor of the facility. The remote sends radio signals of a certain frequency that are detected by the receiver on the crane bridge, telling it which way to move the crane. The receiver contains a relay or contactor. (When a relay is used to switch a large amount of electrical power through its contacts, it is designated as a "contactor." The terms "relay" and "contactor" are often used interchangeably.) A "contactor" opens and closes an electric power circuit. The most common industrial use for contactors is the control of electric motors such as the one used to power the overhead crane in this case. Contactors typically have multiple "contacts," and when those contacts are open, power cannot reach the motor. If the contactor becomes fused or stuck in a closed position, the power to the motor cannot be shut off.

[3] The overhead crane was originally manufactured by Demag Cranes in 1993. Since the installation at Central Motor Wheel in 1997, the crane had been modified considerably, including the addition of a remote-control radio system manufactured by Hetronic USA and installed in 2006, and a hoist and pulley mechanism attached to the crane manufactured by defendant Konecranes and installed in April 2012, shortly before the accident.

the adjacent die set, but it is undisputed that plaintiff asked Bashaw to use the remote to lower the top half while plaintiff guided it to align with the bottom half. Bashaw either placed the remote around his waist using the attachment belt provided for that purpose or he held it in his hand while lowering the top half of the die. The pins entered the guides but became stuck short of full insertion due to misalignment. Bashaw testified that if he did not already have the belt on, he donned it at this point so that he could use both hands to free the jammed pins. He testified that as he attempted to raise the top half of the die, the crane bridge drive "spontaneously" activated, moving the crane and dragging the die set on which the two men were working across the floor. Bashaw testified that he used the remote to reverse the direction of the crane without success. Plaintiff, who had his hands on the die set, felt it begin to move toward him. He testified that it was only moving horizontally, not vertically. Bashaw testified that he continued to manipulate the remote in order to try to move the crane in the opposite direction to no avail. A coworker, Mr. Curtis, was walking into the shop and testified that he saw the die set moving toward plaintiff and saw Bashaw operating the remote in an apparent effort to change its direction. The record is in dispute as to whether anyone tried to activate the emergency stop button or turn off the crane.

The crane moved the die set until further motion was impeded by an adjacent die set. Plaintiff's foot was caught between the two die sets. The witnesses testified that the crane motor continued to run until the "main conductor disconnect" switch was activated by another employee. Plaintiff managed to extricate his foot, but he sustained serious soft-tissue injuries to his foot for which he received medical attention.

At the time of the accident, plaintiff's employer, Central Motor Wheel, had a contract with defendant Konecranes to maintain its cranes, including the one involved in the accident.

Pursuant to this contract, Konecranes conducted scheduled maintenance and performed necessary repairs. The day after the accident, Konecranes sent two technicians, Chris Campbell and Steve Lawson, to Central Motor Wheel to inspect the crane and its components. The technicians tested the crane, including testing of the radio control system. They found nothing wrong with the system, but removed it and replaced it with a new control system. Konecranes' Service Report from May 9, 2012, the day after the accident, states:

> Accessed crane. Removed radio control systems. Radio to be referred to Hetronics [sic] for evaluation. Inspected radio wiring back to bridge; nothing abnormal noted. Removed Bridge reversing and high speed contactors. . . . .

Konecranes Service Report (May 9, 2012). In addition to sending out technicians to examine the crane and its components, Konecranes also conducted an investigation into the accident. Konecranes concluded that the accident was the result of either "faulty radio control or operator error." Konecranes Accident Investigation Product Incident Report Form, at 5 (May 10, 2012). As remedial measures, Konecranes installed a new emergency stop mechanism and a new radio control system.

The radio control system removed from the facility by Konecranes' technicians the day after the accident was sent to Hetronic USA, the original manufacturer of the radio system, for evaluation and testing. Hetronic prepared a service report after testing the radio control system. Under the "System Failure Description," the report states, "operator stated bridge started running by itself. No other possible cause could be found to explain the issue." Hetronic Service Report, at 1 (May 2012). Under the "System Repair Description," the report states:

> 5/22/12  Sent in [transmitter and receiver]. Found [transmitter] to have broken lower housing. Replacing lower housing. Replacing missing rubber cap. Also replacing out of date battery with two new batteries. Could not replicate BRIDGE function moving on its own. Performed tests using computer simulator, range test, extreme environment heat/cold test, and individual output test. No evidence of uncontrolled movement could be replicated. Could have possible matching or

- 4 -

> cable harness problem. Range function tested. IN Returning unrepaired per customer request 7/16/12 EO

*Id.* The Hetronic service report states that the radio system was to be returned to Konecranes "unrepaired per customer request." *Id.* Konecranes says that it cannot locate the removed bridge contactors, but it is unknown whether they were misplaced by Konecranes or Hetronic failed to return them to Konecranes after testing.

Plaintiff's employer, Central Motor Wheel, also conducted its own internal investigation into the accident. It found that the failure of plaintiff and his coworker to follow company procedures by leaving the radio remote "energized" while the crane was not in use may have contributed to the accident. Central Motor Wheel also concluded that a "potential failure in the remote control mechanism of the Demag crane" and the "poor layout of die storage" were conditions that "could have caused [the] injury." Central Motor Wheel Accident Report, at 2 (May 15, 2012).

Plaintiff filed suit in Kentucky state court against only Konecranes, alleging negligent repair, failure to warn, and product liability for the manufacture, design, sale and delivery of the crane. Konecranes removed the action to federal court based on diversity jurisdiction and filed third-party complaints against Demag, the manufacturer of the crane, Hetronic, the manufacturer of the radio control system, and Central Motor Wheel, plaintiff's employer, for apportionment and indemnification. Demag and Hetronic were dismissed by the district court, but it then granted summary judgment in favor of Central Motor Wheel on Konecranes' common–law indemnity claims but in favor of Konecranes on its contractual indemnity claims. Memorandum Opinion and Order (May 29, 2015).[4]

---

[4] This decision was also appealed to our Court. It is docketed in Case No. 15-5690.

The parties conducted substantial discovery concerning the accident and subsequent investigations on the crane and its component parts. In October 2014, the district court granted partial summary judgment to Konecranes on plaintiff's product liability claim. Memorandum Opinion and Order Granting Partial Summary Judgment to Konecranes (Oct. 2, 2014). The claims against Konecranes for negligent repair, failure to warn, and product liability for the Konecranes-brand hoist and trolley components of the crane remained. *Id.* at 6-7.

Plaintiff's expert, Frederick Heath, submitted two reports addressing the causation issue, both of which were excluded by the district court. Memorandum Opinion and Order Excluding Expert (Apr. 13, 2015). Finding no genuine issue of material fact on the remaining portion of plaintiff's product liability claim, and finding that plaintiff failed to establish the causation element of his negligence claim, the district court granted summary judgment to Konecranes. Memorandum Opinion and Order Granting Konecranes' Motion for Summary Judgment (Apr. 15, 2015). The plaintiff filed a motion to set aside the judgment under Federal Rule of Civil Procedure 60(b) that was denied. Memorandum and Opinion Denying Rule 60(b) Motion (May 26, 2015).

Plaintiff appeals the grant of summary judgment on the negligence claim, the district court's order excluding his expert, and the order denying his motion to set aside the judgment under Rule 60(b). Plaintiff does not pursue the dismissal of his product liability claim on appeal. On appeal, plaintiff contends that the district court (1) abused its discretion by excluding his expert's report; and (2) erred in evaluating plaintiff's claim for a "missing evidence" or spoliation adverse inference concerning causation.

**II.**
**A. <u>Negligence by Konecranes</u>**

Under Kentucky law, a negligence action has four elements: duty, breach, causation and injury. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88-89 (Ky. 2003). If a plaintiff is unable to point to specific material evidentiary facts that might reasonably allow the factfinder to find in his favor on each of these elements, his claim must fail. To survive summary judgment, plaintiff must demonstrate evidence of the likely cause for the crane to move "independent of human control," and he must also provide evidence that Konecranes' failure to repair or maintain the crane substantially contributed to any malfunction. Plaintiff contends that there is only one "likely" cause of the accident: fusion of the bridge drive contactors, rendering them unable to respond properly to signals from the remote transmitter operated by plaintiff's coworker at the time of the accident. Plaintiff also claims that Konecranes failed to follow "various standards and regulations" concerning the inspection and replacement of the radio control system, specifically the contactors, thereby breaching its contractual duty to keep the crane in good repair and causing the accident. Konecranes agrees that it had a contractual duty to "properly conduct scheduled maintenance and perform necessary repairs" to the crane, but it contends there is no evidence that it breached this duty.

For the reasons that follow, we affirm the judgment below because even if we were to consider the expert's reports, and if we were to assume plaintiff would receive an inference of causation at trial due to the now-missing contactors, plaintiff has failed to provide sufficient evidence of the likely cause of the accident for a jury to return a verdict in his favor. In addition, plaintiff has failed to provide adequate evidence that Konecranes would be liable based on breach of its duty to repair or maintain the crane.

**1. <u>Causation.</u>** We look first at plaintiff's theory of what caused the crane to move. Kentucky has adopted the legal causation standard set forth in the Restatement (Second) of Torts § 431. Section 431 states:

> The actor's negligent conduct is a legal cause of harm to another if
> (a) his conduct is a substantial factor in bringing about the harm, and
> (b) there is no rule of law relieving the actor from liability because of the manner
> in which his negligence has resulted in the harm.

*See Bailey v. N. Am. Refractories Co.*, 95 S.W.3d 868, 871 (Ky. Ct. App. 2001). Under Kentucky law, causation is generally a question of fact for the jury, but causation should not go to the jury unless the inference of causation is reasonable: it must "indicate the *probable*, as distinguished from a *possible* cause." *Briner v. Gen. Motors Corp.*, 461 S.W.2d 99, 101 (Ky. Ct. App. 1970) (emphasis in original); *see also Huffman v. SS. Mary & Elizabeth Hosp.*, 475 S.W.2d 631, 633 (Ky. Ct. App. 1972). Causation cannot be based upon speculation or surmise. *Huffman.*, 475 S.W.2d at 633.

It is undisputed that the cause of the crane's movement could not be determined. The radio control system was tested by two Konecranes technicians the day after the accident and it worked properly; nothing "abnormal" was noted. Konecranes Service Report (May 9, 2012); Campbell Dep. at 6, 11, 24, 40; Lawson Dep. at 24-29, 50-51, 77. The radio control system was removed and sent to Hetronic, the original manufacturer, for testing and evaluation; Hetronic also reported that the radio control system worked and it could not find a problem with it. Hetronic Service Report (May 2012). There is no mention in either report of signs of fused or partially fused contactors. Although testing failed to replicate any uncontrolled movement, "faulty radio control" was noted as a possible explanation by both Central Motor Wheel and Konecranes in their accident reports, but both reports also identified "operator error" as a

possible cause of the crane's movement. Central Motor Wheel Accident Report (May 15, 2012); Konecranes Investigation Report (May 9, 2012).

The only evidence of causation plaintiff points to is an alleged incident where the "relays" for a radio control system on a different crane had at some unspecified time become fused, causing the crane to become stuck. Plaintiff speculates that the same thing happened with the crane that injured him: the "radio controller spontaneously and erroneously sent a signal to the bridge drive and either the bridge drive relay in the receiver stuck or the bridge drive contactor fused. . . . It is more likely than not that the cause of the incident at issue was a fused contactor." Plaintiff's Response to Summary Judgment Motion at 17.

The evidence must support a reasonable inference that Konecranes' actions were the probable cause, as distinguished from a possible cause, of plaintiff's injury. Here, both operator error and a faulty radio control system were cited as possible causes for the crane's movement, but neither was shown to be a probable cause.

**2. Breach by Konecranes For Failure of Duty to Maintain or Repair.** Even if the contactors had been found to be the likely cause of the accident, plaintiff would also be required to show that Konecranes failed to inspect, maintain or repair the radio control system in accordance with recognized standards, custom or practice in the industry. To this end, plaintiff makes wide-ranging allegations about shortcomings by Konecranes when it comes to maintenance and repair of the cranes at Central Motor Wheel, including the failure to train Central Motor Wheel personnel as to the use of the cranes and the radio control system, and reference to "other incidents" of unintended motion with the crane at issue. But plaintiff fails to point us to evidence in the record to support these allegations, such as specific maintenance records, service reports for repair or other evidence demonstrating that Konecranes failed to

adequately maintain or repair the cranes. To the contrary, the evidence demonstrates that Central Motor Wheel was satisfied with the service it received from Konecranes. Central Motor Wheel's Equipment Assurance Coordinator, Stephen Patrick, was responsible for the coordination of day-to-day repairs and preventive maintenance of the equipment. Patrick was Konecranes' sole contact with Central Motor Works during the relevant time period, and he testified that Konecranes' provided good service to Central Motor Works. Patrick Dep. at 140-41 (July 31, 2014).

As evidence of Konecranes' failure to maintain the equipment properly, plaintiff relies primarily on an incident that occurred several weeks before plaintiff's accident. In April 2012, the hoist on the crane that injured plaintiff became stuck in the raised position, burning out the motor. It was determined that the cause was "fused motor contactor points." Plaintiff's Response to Motion for Summary Judgment at 10. The broken hoist mechanism was the original one manufactured by Demag Crane. It was replaced by Konecranes on April 28, 2012, with a Konecranes-brand hoist and trolley. Plaintiff also mentions another "similar circumstance had been caused by sticking of one or more of the relays in a Hetronic radio control receiver," *id*., but he gives no citation to the record or other information to relate the accident to the instant case, such as the date of the alleged "similar circumstance" or pointing to specific evidence that Konecranes had been derelict in maintaining or repairing the crane.

Based on these two incidents, plaintiff concludes that "[i]f Konecranes had followed the guidelines set forth in the [Crane Manufacturers Association of America's] Specification Section 4.4.4. and Table 4.4.2 [sic], it is more likely than not that the bridge drive contactor(s) would have been replaced prior to the incident, the incident would not have occurred, and [plaintiff] would not have been injured." Plaintiff's Response to Summary Judgment Motion at 18.

Plaintiff's argument is that Konecranes knew or should have known that the contactors on the crane that injured plaintiff were worn out and Konecranes' failure to replace them was in violation of the Crane Manufacturers Association's standard concerning contactors. But the standard cited by plaintiff says only that electrical components, including contactors, should be inspected "periodically" without setting a precise schedule. Crane Manufacturers Association of America, Standards and Guidelines, Specification 78, Table 4.4-2 (2002). Plaintiff points to no standard or industry custom that recommends that all contactors on every crane should be inspected and replaced due to the failure of one contactor. Furthermore, the record demonstrates that Konecranes inspected the cranes regularly, and Stephen Patrick, Central Motor Wheel's Equipment Assurance Coordinator, testified that the electrical components were part of the regular inspections. Patrick Dep. at 12-13. Plaintiff simply has not pointed to evidence demonstrating that the radio control system had not been properly maintained before the accident. Konecranes replaced the contactors as a remedial safety measure after the accident, but there was no indication that they were faulty or had not been properly maintained. [5] As the Kentucky Court of Appeals stated in *Briner v. General Motors*, a negligent repair case, the "difficulty is that the circumstantial evidence is insufficient to establish a reasonable probability that there was a discoverable mechanical defect in plaintiff's automobile when last serviced by Universal which caused the accident. Such a possibility exists, but the law requires more than that." 461 S.W.2d at 101.

---

[5] There is evidence in the record that the "housing" or casing enclosing the radio transmitter was cracked, but plaintiff concedes that this did not cause the accident. Response to Konecranes' Motion to Exclude Testimony that Damage to the Hetronic Radio Remote Transmitter Casing Caused and/or Contributed to the Plaintiff's Accident, at 2 ("Plaintiff agrees there is no opinion finding the crack in the transmitter caused the accident. Plaintiff will not seek to introduce or mention any statement suggesting same."). Plaintiff stated only that he might seek to introduce evidence of the crack to show the level of care Konecranes exercised when providing preventive maintenance. *Id.*

After ample time for discovery, plaintiff has not demonstrated proof of causation or failure by Konecranes to maintain or repair the crane other than the fact of his injury. [6] Absent such a showing, a factfinder would be forced to resort to speculation and conjecture as to causation. The record does not demonstrate how the crane malfunctioned, if at all, and does not foreclose the possibility of causes for the injury not linked to Konecranes' alleged negligence, such as operator error. In addition, in order to hold Konecranes liable, plaintiff must offer some evidence to support a reasonable inference that the state of repair of the crane caused the accident. Because the record lacks evidence to demonstrate a breach of Konecranes' duty to repair and maintain the crane, and the failure to demonstrate a material factual dispute as to causation, plaintiff has not met the evidentiary burden to overcome defendant's motion for summary judgment.

**III.**

On appeal, plaintiff specifically challenges the exclusion of his expert's reports and the rejection of his argument that he would be entitled to a spoliation instruction at trial. We agree with the district court's rulings on both of these issues and discuss them briefly below. Even if we were to admit the expert's reports, and even if we were to assume that plaintiff would receive a spoliation instruction at trial, we would still affirm the judgment of the district court.

---

[6] The plaintiff's theory is basically one of *res ipsa loquitur*, although he never uses that phrase or invokes it to argue that he need not demonstrate a specific cause of his accident. It simply recognizes that as a matter of common knowledge and experience the very nature of an occurrence may justify an inference of negligence on the part of the person who controls the instrumentality causing the injury. Plaintiff's theory, and that of his expert, is that a cause can't be pinpointed, but something went wrong because the crane moved. If it was not plaintiff's fault, someone else must be responsible. However, under Kentucky law, the *res ipsa loquitur* doctrine is not viable unless the defendant, Konecranes, had *complete* control of the instrumentality that caused the injury. *Cox v. Wilson*, 267 S.W.2d 83-84 (Ky. 1954). That is not the case here, as Central Motor Wheel employee Bashaw was operating the crane at the time of the accident and operator error has been cited as a possible cause.

## A. <u>Exclusion of Expert's Reports</u>

Plaintiff hired Frederick Heath, an engineer, to provide expert testimony on Konecranes' alleged violation of standards set forth by the Crane Manufacturers Association of America and the cause of the crane's "malfunction." Heath filed a report on November 17, 2014, but discovery had not been completed. Over vehement objection by Konecranes, the district court allowed Heath to submit a "supplemental report" in March 2015 after the close of discovery and after Konecranes had submitted its motion for summary judgment. Konecranes moved to preclude Heath from testifying, attacking the reliability of his reports under Federal Rule of Evidence 702[7] and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), as well as the untimeliness of the supplemental report. Heath was not deposed by any party. The district court ultimately excluded the expert's testimony based on Federal Rule of Evidence 702 and *Daubert*. Memorandum Opinion and Order Excluding Expert Witness (Apr. 13, 2015).

Heath's report concluded that: (i) either the bridge drive relay in the receiver stuck or the bridge drive contactor fused; (ii) it is more likely than not that the cause of the incident was a fused contactor; (iii) a sticking relay in the radio receiver did not initiate the unintended motion of the crane; (iv) Konecranes actions and inactions were the major contributing causes of the incident that resulted in the injuries to plaintiff; and (v) if Konecranes had followed the guidelines set forth in the Crane Manufacturers Association of America Specifications, it is more

---

[7] Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

likely than not that the bridge drive contactor(s) would have been replaced prior to the incident, the incident would not have occurred, and plaintiff would not have been injured. *See* Expert's Supp. Report, at 12-16 (Mar. 20, 2015). The district court found that Heath failed to explain, given the facts and data he relied upon, how he reached the conclusions in his report. Concluding that Heath's reports lacked "any methodology at all," the district court excluded the report. Memorandum Opinion and Order Excluding Expert Witness, at 6.

In determining whether a particular methodology or set of inferences makes sense, the court is not required to "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). The party seeking to have the testimony admitted bears the burden of showing "that the expert's findings are based on sound science, and this will require some objective, independent validation of the expert's methodology." *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1316 (9th Cir. 1995) (on remand). The district court stated that it was "unable to determine whether Heath's conclusions are 'the product of reliable principles and methods' or whether he 'reliably applied the principles and methods of the facts to the case.'" Memorandum Opinion and Order Excluding Expert Witness, at 7 (quoting Fed. R. Evid. 702).

The district court did not abuse its discretion in excluding the expert reports. The expert reports purported to rely on industry standards as to maintenance schedules and other accepted crane inspection procedures. The report says there "is no evidence that Konecranes followed the specific instructions of [the Crane Manufacturers Association of America] Specification #78, paragraph 4.4.4 and Table 4.4.2 [sic] that the Quarterly inspections of the [Central Motor Wheel] cranes cover electrical components (including contactors and relays) for pitting and

deterioration." Supp. Report, at 10. The report simply concludes that Konecranes did not inspect the electrical components as recommended. It fails to apply an industry-accepted specification to the facts of the case by citing to evidence to demonstrate that Konecranes did *not* inspect the electrical components in accordance with industry standards.

The record demonstrates that Heath is a qualified and credentialed engineer familiar with the mechanical workings of cranes. He lists the documents he reviewed to reach his conclusions, but the report does not explain *how* his experience led him to his conclusions. Given the conclusory nature of Heath's reports, the district court did not abuse its discretion when it refused to allow them into the record. *See Jahn v. Equine Servs., PSC,* 233 F.3d 382, 388 (6th Cir. 2000) ("The focus, of course, must be solely on principles and methodology, not on the conclusions they generate." (quoting *Daubert*, 509 U.S. at 594-95)).

In his motion to set aside the judgment under Rule 60(b), plaintiff contends that it was somehow the district court's job to make sure that the expert's report was adequate to be admitted. Plaintiff contends that the district court overlooked evidence in the expert's supplemental report and erred in failing to hold a *Daubert* hearing. The district court rejected this, pointing out that plaintiff was given multiple opportunities to produce a sound expert report, including the district court's decision to consider the expert's supplemental report after Konecranes filed its summary judgment motion.

Under Kentucky law, expert testimony is necessary in this case to show causation because the common knowledge or experience of lay persons cannot infer a causal connection between the alleged negligence and the injury. *Baylis v. Lourdes Hosp., Inc.*, 805 S.W.2d 122, 124 n.3 (Ky. 1991). Without an expert to establish causation, plaintiff cannot demonstrate the causation element to prove negligence on the part of Konecranes in repairing or maintaining the

crane.  Even if the district court had allowed plaintiff to rely on his expert's reports, there is nothing in them that helps plaintiff meet his evidentiary burden.  On the issue of causation the reports are mere conjecture; the theory that fused contactors caused the crane to move unintentionally is not shown to be more plausible than any other possible cause.

### B. The Missing Evidence Does Not Warrant a Presumption of Causation

After his expert's reports were excluded, plaintiff argued that he should survive summary judgment because he would be entitled to a "missing evidence" instruction at trial.  Plaintiff contends that such an instruction would allow an inference that if the missing bridge contactors could be found, their condition would show why the crane moved independently.

Konecranes concedes that it does not know why the contactors are missing, or who or which company misplaced them, but, regardless of what happened to them, plaintiff has not adduced enough evidence to go to a jury with a theory that fused contactors caused the accident. Absent evidence that failure of the contactors caused the crane to move, their disappearance alone is not enough for plaintiff to survive summary judgment.  Konecranes also correctly points out that absent any evidence of destruction or bad faith with a culpable state of mind, which is not alleged, plaintiff is not entitled to an adverse inference about causation from the missing parts. *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010).  We agree.  Even with a missing evidence instruction, it is unlikely that a jury could find by a preponderance of the evidence that the radio control system was the cause of the accident.  *See Whitt v. Stephen Cty.*, 529 F.3d 278, 284-85 (5th Cir. 2008).  There simply is not sufficient evidence for a jury to draw a reasonable conclusion as to why this accident happened.  The district court was right to conclude the case as it did after careful consideration.

Accordingly, we conclude that there is insufficient evidence to support two essential elements of the negligence claim, breach and causation, and affirm the judgment of the district court.