# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-20085
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

October 1, 2015

Lyle W. Cayce
Clerk

ANTHONY HOOD; PRINCESS WILLIAMS,

Plaintiffs–Appellants,

v.

TESSA POPE, Manager, Asset Plus Corporation; COURTNEY LAMBERT, Assistant Manager, Asset Plus Corporation; KAREN HEFNER, Senior Vice-President of Multi-Family Asset Plus Corporation; HOUSTON POLICE OFFICER, a/k/a Jacob Turner - Onsite Courtesy Officer, Asset Plus Corporation Badge 6715; FRED CALDWELL, Registered Agent, Director, Owner and Manager of Asset Plus Corporation; HOUSTON POLICE DEPARTMENT; JACOB TURNER; ASSET PLUS CORPORATION,

Defendants–Appellees.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:14-CV-1665

No. 15-20085

Before KING, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:*

Anthony Hood and Princess Williams sued Asset Plus Corporation, four Asset Plus employees, Jacob Turner, and the Houston Police Department on various grounds that arose out of a protracted housing dispute, including alleged violations of the Fair Housing Act. The district court dismissed all of these claims. We affirm.

**I**

Anthony Hood and Princess Williams allege that in January 2012, they called Lakeview Lofts, an apartment complex in Houston, Texas managed by Asset Plus Corporation (Asset Plus), regarding the availability of an apartment. According to the complaint, an Asset Plus representative told them that an apartment with a particular floor plan was available for Hood and Williams's specified move-in date. After this conversation, Hood and Williams immediately drove to the complex. Upon their arrival, they were greeted by Stephanie Cantu, an Asset Plus employee who, "after seeing [Hood and Williams] face to face . . . rudely denied the availability of the confirmed unit." Five days later, after Hood and Williams mentioned fair housing laws to Cantu, she told them that the unit they had originally requested was available. Hood and Williams signed an agreement to rent the unit eight days after the initial phone call.

Hood and Williams informed Asset Plus that they were planning to file a Fair Housing Act (FHA) claim against the company. Upon moving into the apartment unit they had requested, they realized that Asset Plus employees

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

were living in surrounding units.  In the following months, Hood and Williams endured "the constant sounds of slammed doors, and beatings on walls and metal," disruptions which they claim were calculated to coerce them into vacating the apartment and becoming "willing to sign" a release form precluding them from bringing "any future lawsuits or fair housing claims" against Asset Plus or its employees.  Hood and Williams further allege that, in the months that followed, Asset Plus and its employees repeatedly attempted to extract additional money from them through various pretexts, such as claiming that they owed an increased pet deposit and trying to convince them to sign a new lease that would deny them a special move-in rate that they had secured in their initial lease.

In July 2012, Courtney Lambert, an Asset Plus employee, and Jacob Turner, a Houston Police Department officer who also worked as a security officer for Asset Plus when not on duty, served Hood and Williams with an eviction notice due to unpaid rent, despite Hood and Williams's protestation that they had paid the rent on time.  Several days later, Asset Plus e-mailed another release form to Hood and Williams, requesting that they relinquish the right to bring any claims for contract fraud, harassment, and all other events that had occurred since they had moved into the Lakeview unit.

In August 2012, Lambert, Turner, and Tessa Pope, another Asset Plus employee, approached Hood and Williams.  Hood and Williams accused the Asset Plus employees of harassing them "because of their race."  After this accusation was voiced, Turner "charged" at one of them and said, "[I]f you don't stop saying that I'm going to handcuff you and throw you in jail."  Hood and Williams then attempted to file an administrative grievance against Turner for pointing his gun at them during the same incident. Allegedly, Turner subsequently entered Hood and Williams's apartment without their knowledge or consent and "left various vacate notices around the unit."  Hood and

No. 15-20085

Williams vacated the premises "out of fear [for] their lives and continued harassment." The next day, Hood and Williams received an e-mail from Brian Cweren, an attorney representing Asset Plus, who "demanded that the plaintiffs sign a [non]disclosure agreement" providing that they would release their claims against Asset Plus and Turner. Cweren threatened to "put an eviction on their record that would make it very difficult to rent or own in the future" if they failed to comply. Several weeks later, Cweren and Pope "followed through with their threats [by] swearing under oath to a judge that the plaintiffs were still living in the unit and put an eviction on both their records." Owing in part to the eviction, Hood and Williams struggled to secure new housing, and their credit score was adversely affected. Cweren allegedly refused to allow Hood and Williams to pay their eviction debt so that they could find housing and begin rebuilding their credit.

Hood and Williams filed an FHA claim with the Department of Housing and Urban Development, which referred the case to the Texas Workforce Commission, Civil Rights Division (TWCCRD). TWCCRD issued a "Determination of No Reasonable Cause" regarding Hood and Williams's claims of housing discrimination. Following TWCCRD's denial of their claim, Hood and Williams filed the instant suit in federal district court in June 2014. They brought claims under various federal criminal statutes, the First Amendment, the FHA, and Texas defamation law. In February 2015, the district court dismissed the criminal law claims because Hood and Williams lack authority to sue under criminal statutes; it dismissed the First Amendment claim because Hood and Williams had not properly pled the claim under 42 U.S.C. § 1983; it dismissed the defamation claim as barred by the relevant statute of limitations; and it dismissed the FHA claims for failure to state a claim upon which relief can be granted. On appeal, Hood and Williams argue only the First Amendment and FHA claims.

No. 15-20085

## II

We review a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) de novo, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs."[1] To state a claim under the FHA, plaintiffs must allege facts that make it plausible, rather than merely conceivable, that the defendants' conduct fell within the terms of the statute.[2] The allegations must amount to more than a "formulaic recitation of the elements" of a discrimination claim;[3] a complaint that pleads facts that are "merely consistent with" a defendant's liability is insufficient.[4]

It is unlawful under 42 U.S.C. § 3604(a) to "refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race . . . ." It is unlawful under 42 U.S.C. § 3604(b) to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race . . . ." Among the conduct to which § 3604(b) applies are threats to evict and actual or constructive eviction.[5] It is unlawful under 42 U.S.C. § 3604(d) to "represent to any person because of race . . . that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available." To prove that an action was discriminatory under § 3604, a plaintiff must establish (1) that defendant's stated reason for its decision was

---

[1] *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 634 (5th Cir. 2014) (quoting *Morris v. Livingston*, 739 F.3d 740, 745 (5th Cir. 2014)).

[2] *See Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009).

[3] *Id.* at 681 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[4] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

[5] *Woods-Drake v. Lundy*, 667 F.2d 1198, 1201 (5th Cir. 1982); *see also Cox v. City of Dallas*, 430 F.3d 734, 746 (5th Cir. 2005).

pretextual, and (2) a reasonable inference that race was a significant factor in the refusal.[6]

## A

Hood and Williams assert claims for discriminatory treatment in the negotiation of their lease, despite conceding that they rented the unit they requested under terms no different from those offered to other tenants. The district court concluded that because Hood and Williams signed a lease for the apartment that they requested eight days after being denied the apartment during their first face-to-face meeting with an Asset Plus representative, they failed to state a claim under 42 U.S.C. § 3604(a) or (b). Hood and Williams acknowledge that Asset Plus called them and offered them a unit five days after their initial meeting. However, they contend that this swift reversal was insufficient to cure the violation of § 3604 that had already been committed because § 3604 "is only concerned with the original denial of a rental." The district court appears to have considered whether Hood and Williams stated a claim under § 3604(c), rather than (d), because Hood and Williams's complaint reproduced the text of § 3604(d) but cited it as (c). We consider whether § 3604(a), (b), or (d) was violated.[7]

Although it is not necessarily the case that "a current owner has no claim for attempted and unsuccessful discrimination relating to the initial sale or rental of the house,"[8] Hood and Williams's claims fail because they have not alleged sufficient facts to suggest that the in-person refusal by Cantu or any of the subsequent actions taken by Asset Plus were on account of their race. The only allegation potentially indicative of Cantu's discriminatory behavior is that

---

[6] *Artisan/Am. Corp. v. City of Alvin*, 588 F.3d 291, 295 (5th Cir. 2009).

[7] *See Erickson v. Pardus*, 551 U.S. 89, 94 ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

[8] *Cox*, 430 F.3d at 742.

they were told over the phone by an Asset Plus representative that a specific floor plan was available, but Cantu told them in person shortly thereafter that it was not.  It is conceivable that this discrepancy was due to their race, but there are also many unrelated explanations that are just as conceivable, if not more so: oversight by the Asset Plus employee they spoke with by phone; miscommunication over the phone about their desired floor plan; deliberate deception by Asset Plus to lure them to the apartment complex only to lease them something other than what they requested; or a dispute that arose during the in-person meeting for reasons unrelated to race.  Importantly, unlike in cases where claims are properly stated under § 3604, Hood and Williams have alleged nothing that isolates race as a factor in Cantu's motivations.[9]  Even the most generous view of Hood and Williams's claim is that they were denied the apartment because of something that occurred during the in-person meeting.  For a court to assume any more would be to assume the truth of Hood and Williams's legal causation assertions, which is forbidden even under the liberal standards courts use to evaluate motions to dismiss.[10]

Hood and Williams also state, without citation or additional support, that the racial make-up of the apartment complex was less than twenty percent African-American, which is "a disproportionate number" in light of the "average monthly rental cost and the racial demographics of the area."  Even if this is true, it does little to suggest that the in-person denial was racially motivated.  Nor do Hood and Williams explain why or to what extent this figure

---

[9] *See, e.g.*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 368 (1982) (recognizing disparate treatment when two black and two white prospective renters made multiple separate inquiries at the same property on different days); *Lincoln v. Case*, 340 F.3d 283, 286 (5th Cir. 2003) (concluding that the evidence confirmed plaintiff's suspicion that his initial denial was based on race when two black and two white "testers" made separate inquiries).

[10] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

is disproportionate, and in any case it indicates that there is an African-American presence in the complex. Hood and Williams also point to Turner's anger when they said to him, seven months after they signed the lease, that they believed they were being harassed because of their race. But that incident was unrelated to the initial denial and does not indicate that any subsequent harassment by Asset Plus was discriminatory. Turner's emotions are not probative of the past motivations of other employees, nor, in this case, his own, since umbrage at an accusation of unlawful discriminatory behavior might equally be expected both from people who discriminate and from people who do not.

Hood and Williams have failed to establish a plausible basis for a contention that any defendant's behavior was discriminatory, and the district court properly dismissed all of their claims brought under § 3604.

**B**

Hood and Williams argue that Asset Plus's offer to them of the unit they requested, as well as harassment that occurred after they moved in, violated their rights under 42 U.S.C. § 3617, which makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected by section . . . 3604 . . . of this title." But Hood and Williams voluntarily rented the apartment and have not suggested that they did so due to any kind of threatening or intimidating behavior by Asset Plus. Asset Plus's willingness to lease the apartment to Hood and Williams did not violate § 3617. Any subsequent harassment by any of the defendants did not violate § 3617, because as explained above, Hood and Williams have not stated a claim that they at any point exercised or enjoyed any right granted under § 3604. Even if they had stated a claim under § 3604, Hood and Williams have not alleged facts, beyond conclusory assertions, that suggest that the harassment they

No. 15-20085

endured was connected to their attempts to exercise their rights under the FHA. The behavior they do allege, though potentially unlawful for other reasons, would not violate § 3617.

## C

Hood and Williams argue that the TWCCRD report should not have been considered in a ruling on the motion to dismiss their FHA claims. Although they are correct that courts must generally limit themselves to the pleadings in ruling on a motion to dismiss, courts may also consider documents attached to the motion to dismiss that are "central to the claim and referenced by the complaint." Here, Hood and Williams's complaint referenced their HUD fair housing claim, which was later referred to TWCCRD and gave rise to the report. In any case, the contents of the report are not necessary to our conclusion that Hood and Williams have not stated a claim under §§ 3604 and 3617.

## III

Hood and Williams's First Amendment claim was improperly pleaded in their original complaint, and although the district court gave them leave to amend their complaint so as properly to allege a violation of 42 U.S.C. § 1983,[11] they failed to do so. Accordingly, the issue is raised for the first time on appeal, and "[a]rguments not raised in the district court cannot be asserted for the first time on appeal."[12]

## IV

Hood and Williams's contention that the district court exhibited bias against them and abused its discretion in staying discovery are without merit. The purpose of a motion to dismiss is to evaluate the strength of a plaintiff's

---

[11] *See Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014) ("[P]etitioners, on remand, should be accorded an opportunity to add to their complaint a citation to § 1983.").

[12] *Greenberg v. Crossroads Sys., Inc.,* 364 F.3d 657, 669 (5th Cir. 2004).

No. 15-20085

claim based on the allegations in the pleadings, and a stay of discovery to do so is not unreasonable.[13]  Hood and Williams do not otherwise reference any facts that suggest bias.

*        *        *

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[13] *Ferrer v. Chevron Corp.*, 484 F.3d 776, 782 (5th Cir. 2007).

10