# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
May 11, 2022

Lyle W. Cayce
Clerk

No. 21-20170

Hector Salas, Sr., *individually and as representative of the* Estate of Hector Salas, Jr.; Andrea Silva, *individually, and as next friend* H. S. *and* A. S.; Cynthia Montiel, *as next friend* E. S.,

*Plaintiffs—Appellants*,

*versus*

City of Galena Park,

*Defendant—Appellee*,

Consolidated with

No. 21-20333

Hector Salas, Sr., *individually and as representative of the* Estate of Hector Salas, Jr.; Andrea Silva, *Individually and A/N/F for* H.S., A.S.; Cynthia Montiel, *A/N/F for* E.S.,

*Plaintiffs—Appellants*,

*versus*

James Knox; Cynthia Jimenez,

*Defendants—Appellees*.

No. 21-20170
c/w No. 21-20333

Appeal from the United States District Court
for the Southern District of Texas
USDC Nos. 4:19-CV-4479 & 4:21-CV-892

Before Higginbotham, Dennis, and Graves, *Circuit Judges*.
Per Curiam:*

This consolidated appeal arises from two lawsuits seeking to hold the City of Galena Park, Texas (the "City") and several of its law enforcement officers accountable for the death-in-custody of Hector Salas, Jr. Salas was left alone and unmonitored in a cell at the Galena Park Jail for hours even though jail officers knew that Salas had recently attempted to take his own life and was still suicidal. While the officers ate pizza and watched Netflix instead of walking their rounds as required by policy, Salas hanged himself with strips of fabric torn from his mattress.

Representatives of Salas's estate (the "Estate") sued the City, and later the police chief and several officers on duty the night of Salas's death in two different lawsuits (the "City Suit" and the "Officer Suit," respectively). After a series of procedural missteps by the Estate's counsel, the district court dismissed the City Suit for failing to plead a constitutional injury and alternatively for failing to plead municipal liability. The court later dismissed the separate Officer Suit as barred by Texas's statute of limitations. In a post-judgment motion in the City Suit, the Estate sought, among other forms of relief, leave to amend its petition. The district court denied leave, applying Rule 59(e)'s standard of manifest error of law or fact.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-20170
c/w No. 21-20333

We AFFIRM the district court's dismissal of the Officer Suit as barred by the statute of limitations. However, we find that the district court abused its discretion in the City Suit by denying the Estate's post-judgment motion seeking leave to amend its petition. We therefore REVERSE the district court's denial of post-judgment leave to amend and REMAND for amendment and further proceedings in case number 4:19-CV-4479.

## I. Facts and Procedural History

Early in the morning of November 28, 2018, Andrea Silva called the police because her husband, Hector Salas Jr., had taken a handful of medications in an attempt to commit suicide. When a Galena Park police officer arrived, Salas begged the officer to shoot him and said that he wanted to die. The officer took Salas to Ben Taub Hospital and requested that Salas be held for forty-eight hours for psychological evaluation. For reasons that are not clear from the record, Salas was released from the hospital later that afternoon. The next day, Salas's wife again called the Galena Park police because Salas was still suicidal. This time, Salas was taken to the Galena Park Jail.

Though the jail noted that Salas was suicidal at intake, Salas was placed alone in a cell and left unmonitored for nearly five hours. During this time, Salas tore strips of fabric from his mattress and fashioned a noose. Twice he tried to hang himself but failed. On his third attempt, Salas succeeded. The two officers on duty that night did not monitor the surveillance video of Salas's cell or make any hourly in-person checks as were required.[1] Instead, they ordered pizza and watched Netflix until Salas's wife

---

[1] Though the Estate did not include any specific allegations to this effect, an incident report submitted later in response to a district court management order states that, had the officers performed their hourly rounds as required, they would have seen Salas

No. 21-20170
c/w No. 21-20333

called around midnight to check on her suicidal husband's status. After the call, the officers went to Salas's cell and found his lifeless body.

## A. The City Suit

Representatives of Salas's estate first filed a lawsuit against the City of Galena Park, a person named Rick Gonzalez who was alleged to be the police chief, and five unnamed police officers in state court. The petition alleged a variety of claims: that the City failed to train and supervise its officers, that Chief Gonzalez also failed to train and supervise his officers, and that the officers themselves failed to protect Salas from self-harm despite their knowledge of the obvious risk. The petition also alleged state law wrongful death and personal injury claims. The City removed the case to federal court and filed a motion to dismiss for failure to state a claim. Before the Estate responded to this motion to dismiss, the district court held a "pre-trial conference." After the conference, the court dismissed Gonzalez from the suit because, as the Estate conceded, he had left the employ of Galena Park five months before Salas's suicide and was therefore not liable for Salas's injuries or death. The court also ordered the parties to exchange certain discovery and ordered the Estate to depose "the fired deputy" before it would "discuss whether she will be added as a party."[2]

The Estate sought an extension of time to respond to the pending motion to dismiss, stating that it intended to amend the petition with the

---

tearing strips from his mattress and been able to intervene, "possibly preventing his intentional asphyxiation to himself."

[2] The record does not contain a transcript of this conference, but the parties' briefs identify the deputy in question as Cynthia Jimenez, whom the Estate later attempted to add to the case by amending its petition. However, motions for extension filed by the Estate shortly after this conference suggest the deputy in question was Adrian Herrera. The record is unfortunately inconclusive as to who, if anyone specifically, the district court instructed the Estate to depose.

4

No. 21-20170
c/w No. 21-20333

leave of the court, but first would need time to depose "Officer Herrera." The court granted the motion, giving the Estate until February 23, 2020 to respond to the City's motion to dismiss. On February 23, 2020, the Estate filed another motion for an extension of time, stating again that it intended to amend its petition,[3] but would need time to depose "Officers Herrera and Jimenez." The next day, February 24, 2020, the Estate filed a First Amended Complaint into the district court's docket without seeking leave, naming Rodney Chersky, purportedly the correct police chief, and officer Cynthia Jimenez as defendants. That same day the court granted the Estate's second motion for an extension, setting a deadline of March 6, 2020 to respond to the pending motion to dismiss. This order did not reference the amended complaint.

On March 6, 2020, the Estate filed its opposition to the motion to dismiss. On March 9, 2020, the City filed a motion to strike the Estate's First Amended Complaint for failing to seek leave of the court and for failing to show good cause why it never deposed the missing deputy as the court's management order required. The court granted the City's motion to strike, stating again that the Estate may seek leave to amend after deposing Cynthia Jimenez. The district court then ordered a status conference to discuss the motion to dismiss, but counsel for the Estate failed to attend. Following this, the court dismissed the original unnamed officer defendants, "Does 1–5," as improvidently joined. At this point, only the City of Galena Park remained as

---

[3] Because this case was removed from Texas state court, the Estate's initial operative pleading was styled as a petition. When it attempted to amend, the new pleading was styled as a complaint, specifically the First Amended Complaint. Throughout this opinion, we refer to the Estate's original state court pleadings as petitions and any subsequent pleading filed in federal court as complaints, following the titles that appear on them in the record.

a defendant. It does not appear that the Estate's counsel ever deposed Jimenez, Herrera, or any other deputy.

There was no more activity in the case until December 30, 2020, when the district court granted the City's motion to dismiss for failure to state a claim. According to the court's opinion, the Estate failed to state a claim because "no constitutional right to proper implementation of adequate suicide prevention exists." Alternatively, the court held, the Estate's claim failed because it failed to plead facts showing the City or a City policymaker acted with deliberate indifference. As to the state law claims, the district court accepted them as "waived" because the Estate argued in its briefing that it was "only pursuing" the constitutional claims in its petition.[4] A final judgment dismissing the case with prejudice was entered.

The Estate filed a Rule 59(e) motion to alter or amend the judgment, challenging the court's dismissal of the case for failure to state a claim. The motion also challenged the district court's earlier decision to strike its First Amended Complaint, arguing that it could amend its operative pleading without leave of the court pursuant to Rule 15(a)(1) because the court's extensions of time to respond to the motion to dismiss automatically extended the time to amend as of course. In the alternative, the Estate

---

[4] In its briefing before this court, the Estate makes the same assertion, appearing to have copied and pasted from its district court briefing. Though the briefing is not entirely coherent, the Estate does assert that "[i]t is clear from appellants" [*sic*] allegations that they are not pursuing claims that fit under" Texas's waiver of sovereign immunity for state law torts. "Instead, Appellants assert civil rights claims for The City of Galena's [*sic*] deliberate indifference to Salas' serious medical needs." Whether or not this may be correctly read as waiver of the Estate's state law tort claims, the argument on appeal does not challenge the district court's ruling on those claims. Therefore, whatever state law claims the Estate could have appealed in this court are abandoned. *Stem v. Gomez*, 813 F.3d 205, 213 (5th Cir. 2016) ("If a party fails to mention a district court's disposition of certain claims in its briefing, such claims 'are considered abandoned.'") (quoting *Huckabay v. Moore*, 142 F.3d 233, 238 n.2 (5th Cir. 1998)).

requested leave to amend. The district court denied this motion. It reaffirmed its conclusion that the original petition failed to state a claim, rejected the Estate's argument that it could amend as of course since the First Amended Complaint was filed long past the twenty-one-day window provided by Rule 15(a)(1), and denied the request for leave to amend. In each instance, the district court applied a standard of "manifest error of law" and "manifest injustice" to the Estate's arguments in the motion. The Estate appealed.

### B. The Officer Suit

On December 1, 2020, while the district court was deciding the City's motion to dismiss in the City Suit, the Estate filed another, very similar lawsuit in state court. This suit named as defendants Chief James Knox, and Officers Adrian Herrera and Cynthia Jimenez, each in their individual capacities. As in the earlier lawsuit, the petition alleged that Galena Park officials knew of Salas's suicidal state of mind, yet left him alone and unmonitored in a jail cell where he was able to hang himself using strips of mattress fabric. Many of the factual allegations in this petition appear to have been copied from the petition in the earlier suit. But whereas the earlier suit sought to impose municipal liability on the City of Galena Park, this suit only claimed that Officers Jimenez and Herrera failed to protect Salas and that Chief Knox had failed to properly train or supervise them.

The defendants removed this case to federal court, where it was related to the Estate's earlier lawsuit against Galena Park and assigned to the same judge presiding over that case. The defendants moved to dismiss the case, asserting that it was barred by Texas's statute of limitations, and in the alternative that it failed to state a claim. The district court agreed, stating that the statute of limitations for § 1983 cases filed in Texas is two years, and that the Estate's counsel filed this lawsuit one day late. In the alternative, the court held that the complaint failed to plead facts establishing deliberate

indifference, and that, in any case, there is no constitutional right to the proper implementation of adequate suicide prevention protocols. The Estate appealed this dismissal and consolidated the appeals into the matter presently before this court.

## II. Standards of Review

We review a motion to dismiss *de novo*, accepting all well-pleaded facts as true and interpreting them in the light most favorable to the plaintiff. *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 177 (5th Cir. 2018). To survive a motion to dismiss, the facts in the complaint must plausibly show that the defendant is liable and the plaintiff entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A Rule 59(e) motion for relief from a judgment is reviewed for abuse of discretion, though the level of a district court's discretion varies with the kind of relief sought in the motion. Generally, a Rule 59(e) motion "'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). However, when the motion seeks to reopen a judgment on the pleadings in order to amend the pleadings "the disposition of the plaintiff's motion to vacate under [R]ule 59(e) should be governed by the same considerations controlling the exercise of discretion under [R]ule 15(a)." *Id.* at 864 (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 n.1 (5th Cir. 1981)). Thus, "we review the district court's denial of plaintiff['s] 59(e) motion for abuse of discretion, in light of the limited discretion of Rule 15(a)." *Id.*

No. 21-20170
c/w No. 21-20333

### III. Discussion

### A. The City Suit

42 U.S.C. § 1983 creates a cause of action for deprivations of constitutional and federal statutory rights by persons acting under of color of state law. A municipality is a "person" under § 1983, but, like any § 1983 defendant, it may only be held liable for its own actions—that is, official policies or customs, or the actions of its employees taken pursuant to these. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). This official policy or custom must be the "moving force" of the plaintiff's injury, and like all § 1983 claims, the injury must be a violation of a right secured by the Constitution or federal law. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989); *see also Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 121–22 (1992) (emphasizing the "separate character" of these inquiries). When the municipal policy or custom alleged is a failure to train or supervise, deliberate indifference must be shown. *City of Canton*, 489 U.S. at 388; *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009).

Given this welter of requirements, pleading *Monell* liability is notoriously difficult. And "[e]ven within the difficult world of *Monell* liability, failure-to-train claims are especially difficult to establish." *Anderson v. Marshall Cty., Miss.*, 637 F. App'x 127, 134 (5th Cir. 2016) (unpublished) (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). The district court held that the Estate failed to state a claim against the City, first because it failed to allege a violation of a recognized constitutional right, and second because it did not plead the elements required by *Monell* and its progeny. The court did not address the Estate's allegations against the unnamed officers for their deliberate indifference to Salas's rights since they had been dismissed as defendants. As discussed below, we agree with the district court that the Estate's original petition failed to adequately plead *Monell* liability. However,

No. 21-20170
c/w No. 21-20333

both the original petition and the amended complaint describe a violation of a constitutional right—contrary to the district court's ruling—and the proposed amended complaint does succeed in stating a claim against the individual officers on duty that night. Because this amended complaint states a claim, and the record does not disclose substantial reasons for denying leave, we conclude that it was an abuse of discretion for the district court to deny the Estate's post-judgment motion for leave to amend. We address each of these conclusions below.

### 1. Failure to State a Claim Against the City

The district court dismissed the Estate's case firstly because "[n]o constitutional right to the proper implementation of adequate suicide prevention protocols for pretrial detainees exists," citing *Taylor v. Barkes*, 575 U.S. 822 (2015). While that is an accurate restatement of *Taylor*'s holding, it is not an accurate characterization of the allegations in the Estate's case and is therefore an inappropriate application of *Taylor*. The Estate charges that jail officers knew of Salas's suicide risk and acted with unreasonable disregard for his safety. Though the Estate's original petition is larded with legal conclusions and at times contradicts itself, it can reasonably be read to plausibly allege the following facts: Officials at the Galena Park Jail had actual knowledge of Salas's suicide risk. They nonetheless placed him in a cell that was not designed to safely house people who might harm themselves. The officers on duty failed to check on Salas or monitor him while he repeatedly sought to hang himself. Salas was left unmonitored long enough for him to try to hang himself twice and to succeed on the third attempt.

These factual allegations are different than the summary judgment facts in *Taylor*, in which a jail contractor who had no knowledge of the plaintiff's mental health history used a suicide screening form whose sole

defect was that it did not comply with the latest standards from the National Commission on Correctional Health Care. 575 U.S. at 823. Thus, the hypothetical right rejected by *Taylor* was a narrow, standalone right to "proper implementation of adequate suicide prevention protocols." *Id.* at 826. The case did not involve the broader, and unfortunately familiar, fact pattern of indifference or inaction in the face of known risks. As the Second Circuit put it:

> [*Taylor*] did not conclude that it would have been reasonable for the prison guards to completely forego suicide-prevention screening—to simply not act at all. Nor did it conclude that it would have been consistent with clearly established law for the prison guards to forego preventive measures if they were aware that an inmate posed a suicide risk—to operate in a state of knowing indifference. And so, the Supreme Court did not address the distinct possibility that complete inaction in the face of a risk to a prisoner's health—or complete indifference to that risk once it was known—could be unreasonable, in violation of a prisoner's clearly established constitutional rights.

*Vega v. Semple*, 963 F.3d 259, 279–80 (2d Cir. 2020).

It is well-settled in our circuit that complete indifference to the known risk of suicide violates a pretrial detainee's constitutional rights. *See Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996) (en banc); *Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019) (constitutional rights of pretrial detainee include "the right to protection from known suicidal tendencies") (citing *Flores v. County of Hardeman, Tex.*, 124 F.3d 736, 738 (5th Cir. 1997)). *Taylor* did not curtail this right. *See Est. of Bonilla ex rel. Bonilla v. Orange Cty., Tex.*, 982 F.3d 298, 307 (5th Cir. 2020) (recognizing a detainee's "clearly established right to be protected from her known suicidal

tendencies," *Taylor* notwithstanding). The district court thus erred in holding that the Estate failed to allege a violation of a constitutional right.

The district court was correct, however, that the Estate failed to adequately plead facts showing that it was the City that was responsible for this constitutional violation. The petition only contains legal conclusions of municipal liability. For instance, that "Galena Park was indifferent to Hector Salas' serious medical needs, mental health needs and protection." Or "Defendant Galena Park failed to train and to failed to adequately supervise its jail detention officers and employees and agents." These statements are grounds for liability that one might conclude exist from a certain set of factual allegations, but they are not factual allegations themselves. There are no specific factual allegations of a policy or custom of deliberate indifference to detainees at risk of self-harm, nor any factual allegations that such a policy or custom was causally connected to Salas's death. The only facts alleged in the original petition speak to the jail officers' deliberate indifference—that they knew Salas was suicidal, placed him in an unsafe cell, and left him unsupervised for hours. These facts do not establish that the officers were acting pursuant to a municipal policy or custom, that the policymaker was deliberately indifferent, or that a municipal policy or custom was otherwise the driving force of Salas's constitutional deprivation.

### 2. Post-Judgment Denial of Leave to Amend

When the district court decided the motion to dismiss, only the City of Galena Park remained as a defendant and thus municipal liability was the only theory on which the Estate could have conceivably recovered. Chief Rick Gonzalez had been dismissed as a defendant early in the case. And the unnamed officers were dismissed "as improvidently joined," apparently because the Estate had failed to name defendants by the deadline the court established to respond to the City's motion to dismiss. However, the Estate

did attempt to amend its petition, naming a new police chief and a specific officer, Cynthia Jimenez, as defendants, as well as adding a number of new factual allegations to buttress its claims. It did this without moving for leave from the court or seeking consent from the City. Instead, the Estate simply filed an amended complaint into the docket. On the City's motion, the district court struck the amended complaint and reiterated that the Estate could seek leave.

After the district court ruled on the City's motion to dismiss and entered final judgment, the Estate filed a Rule 59(e) motion challenging the striking of its amended complaint, and alternatively requested leave to amend post-judgment. The Estate argued that Rule 15(a)(1)'s twenty-one-day window to file as of course had been extended automatically by the extensions to respond to the City's motion to dismiss. Rule 15(a)(1) provides that a plaintiff may amend its complaint once without leave of the court or consent of the defendants within twenty-one days of service of a Rule 12(b) motion. Our court has not said whether extending the time to respond to a Rule 12(b) motion automatically extends the time to amend as of course, and the district courts are divided on the question. *See Tolliver v. Bank of New York Mellon as Tr. for Certificate Holders of CWABS Inc., Asset Backed Certificates, Series 2007-3*, No. 4:18-CV-00977, 2019 WL 3937341, at *6 (N.D. Tex. Aug. 5, 2019) (discussing split). Some hold that there is nothing in the text of Rule 15(a) to support such an idea. *See Ellis v. Jean*, No. 10-CV-8837, 2011 WL 6368555, at *7 (S.D.N.Y. Dec. 16, 2011). Others hold that the notice policies of Rule 15(a) are satisfied when it is clear from the motion for an extension that the plaintiff intends to respond to the pending motion to dismiss with an amended complaint. *See Tolliver*, 2019 WL 3937341, at *6.

The Estate provides no authority, or even argument, to support its claim that it was entitled to an automatic extension. In any event, the Estate's motions for extensions do not fit even into the latter category of the district

court decisions discussed above. In both of its motions, the Estate stated that it did intend to amend its petition, but by seeking the leave of the court, not as of course under Rule 15(a)(1). It also filed an opposition memorandum to the pending motion to dismiss in addition to its amended complaint, before the amended complaint was struck. Nowhere in this memorandum did the Estate argue that its amended complaint mooted the City's motion to dismiss. This suggests that the Estate did not consider its amended complaint as a response to the pending Rule 12(b) motion, and therefore the City could not reasonably have been on notice that the Estate intended to respond to the pending motion to dismiss with its amended complaint. Under these circumstances, we cannot say that the district court's extensions automatically enlarged the time in which the Estate could amend its petition as of course.

Independent of this argument, the Estate requested leave to amend in its Rule 59(e) motion. The district court denied leave, noting that the Estate had failed to depose Officer Jimenez, exchange discovery, or to "otherwise prosecute their case." Finding no "manifest error of law," no "manifest injustice," and "given no new facts"—the standard to which a Rule 59(e) motion is generally held, *Rosenzweig*, 332 F.3d at 863—the court denied leave to amend. Here the district court committed error by applying the wrong standard to the Estate's request for leave to amend, even couched as it was in a Rule 59 motion. The proper standard to apply in this circumstance is Rule 15's "limited discretion."[5] *Id.* at 864.

---

[5] The City seems to argue that Rule 16(b)'s "good cause" standard should apply to the request to amend since the Estate missed a deadline established in the district court's management order—though it also says it is "immaterial" which standard applies. Regardless, we hold that the correct standard here is Rule 15's. The management order did not set a deadline for amending the petition. It only set a deadline for deposing the "fired deputy." *See Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021) (reasoning that

The Supreme Court has enumerated five factors to consider when faced with a request for leave to amend: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Absent any of these factors, leave must be freely given as the Federal Rules require. *Id.* Thus, though leave to amend is technically within the discretion of the district court to grant or deny, that discretion is significantly circumscribed.

The district court did not analyze these factors in denying leave to amend, but we may nonetheless affirm the denial if "the record reflects 'ample and obvious grounds for denying leave to amend.'" *Mayeaux v. Louisiana Health Serv. & Indem. Co.*, 376 F.3d 420, 426 (5th Cir. 2004) (quoting *Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 1154 (5th Cir. 1981)). Reviewing the record, we see no such grounds. There has not been a failure to cure deficiencies through earlier amendments, as there have been no earlier amendments. There is no evidence of bad faith or dilatory motive on behalf of the Estate, though it does appear that there has been considerable unexplained delay.[6] But "delay alone is an insufficient basis for denial of leave to amend." *Id.* at 427. The delay must prejudice the City; for instance by preventing it from preparing for trial, or by adding a new claim after the close of discovery. *Id.*; *Dueling v. Devon Energy Corp.*, 623 F. App'x 127, 130 (5th Cir. 2015) (unpublished) (discussing cases of prejudicial delay). It does not

---

"litigants are entitled to rely on the meaning suggested by the plain language of a court order").

[6] The Estate filed its amended complaint without leave on February 24, 2020. The district court struck this complaint on March 17, 2020, providing in its order that the Estate could still seek leave to amend. However, the Estate did not seek such leave until January 27, 2021, when it filed its Rule 59(e) motion.

appear that amendment would prejudicially delay the City since little discovery has been exchanged in this case. Only one dispositive pretrial motion has been decided. Furthermore, the Estate's amended complaint seeks primarily to add a defendant and to allege additional facts about her involvement in the underlying transaction of events already described in the original petition.

The final factor, futility, also favors granting leave to amend here. As discussed above, the Estate's original petition failed to adequately plead a municipal policy that was the driving force of Salas's constitutional injury. However, the amended complaint does, at the very least, state a claim of deliberate indifference by Cynthia Jimenez, one of the jail officers alleged to have known of Salas's suicidal tendencies who nonetheless failed to take any basic precautionary measures to prevent self-harm. As discussed above, pretrial detainees have a constitutional right to protection from self-harm. "And it is well-settled law that jail officials violate this right if 'they had gained actual knowledge of the substantial risk of suicide and responded with deliberate indifference.'" *Converse v. City of Kemah, Texas*, 961 F.3d 771, 775 (5th Cir. 2020) (quoting *Hare*, 74 F.3d at 650). Failing to regularly monitor— or ever monitor at all—a detainee known to be suicidal is the kind of objectively unreasonable conduct we have previously determined satisfies this standard. *See id.* at 778 (officer "streaming television shows instead of monitoring the video of" suicidal detainee's cell for forty-five minutes); *cf. Hyatt v. Thomas*, 843 F.3d 172, 179 (5th Cir. 2016) ("continuous" surveillance of suicidal detainee not deliberately indifferent); *Est. of Pollard v. Hood Cty., Tex.*, 579 F. App'x 260, 265 (5th Cir. 2014) (unpublished) (checks roughly every fifteen minutes not deliberately indifferent). The Estate's proposed amended complaint alleges that Salas personally informed Jimenez of his recent suicide attempt and hospitalization, as had Salas's wife, and that Jimenez failed to check on Salas at all. This is enough to state a claim

of deliberate indifference to Salas's constitutional rights to protection from self-harm.

Considering the record in light of these factors, we see no substantial reason to deny leave to amend the Estate's petition and must conclude that "the discretion of the district court is not broad enough to permit denial." *Dussouy*, 660 F.2d at 598. The Estate's amended complaint does succeed in stating a claim against Officer Jimenez and allowing it to amend its pleading even at this late hour in the litigation would not unduly prejudice the defendants. The district court abused its discretion in denying the Estate's request for leave in its post-judgment motion.

## B. The Officer Suit

After the Estate's amended complaint had been struck and while the City's motion to dismiss the City Suit was pending, the Estate filed a second lawsuit in state court alleging almost identical facts and claims of deliberate indifference by the individual officers present at the Galena Park Jail the night Salas hanged himself. The principal difference between this new Officer Suit and the City Suit pending in federal court at the time was that it named Cynthia Jimenez and Adrian Herrera as the defendant officers, as the amended complaint in the City Suit had attempted in part to do.

The Estate's counsel filed the Officer Suit in state court at 12:05 A.M. on December 1, 2018. The district court determined that this filing was beyond the applicable limitations period. Federal law does not provide a limitations period for § 1983 claims, and so courts look to the statute of limitations for personal injury actions of the forum state. *Whitt v. Stephens Cty.*, 529 F.3d 278, 282 (5th Cir. 2008). In Texas, that period is two years. *Id.* The date the limitation period begins to run, however, is determined by federal law, which sets the date a claim accrues at the time the plaintiff becomes aware that she has been injured. *Piotrowski v. City of Houston*, 51 F.3d

17

512, 516 (5th Cir. 1995). This awareness encompasses two elements: (1) knowledge of the fact that an injury has occurred, which is not the same as knowledge that one has a legal claim, and; (2) knowledge of the identity of the person who inflicted the injury. *Id.* In Texas, the limitations period is computed by including the day on which the claim accrued, such that if a claim accrued on January 1, 2020, the injured party must file her claim no later than January 1, 2022. Texas courts "have uniformly held that a complaint filed the day after the same calendar day two years after the action accrued is one day too late." *Price v. City of San Antonio, Tex.*, 431 F.3d 890, 893 (5th Cir. 2005). Thus, the Estate had two calendar years in which to file a § 1983 claim from the date Salas was aware of the facts constituting his injury.

"A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003). Though our court has not articulated the precise contours of when a protection from self-harm claim accrues,[7] even assuming it accrued at the time of Salas's death (as opposed to earlier, for instance, when the officers first exhibited their deliberate indifference towards his risk of suicide), Salas's case is barred by the statute of limitations. The Estate's complaint in this suit alleged that Salas died shortly after midnight on November 30, 2018. Assuming this is the accrual date, the Estate had until November 30, 2020 to file suit. Tragically, the Estate's counsel filed this pleading just five minutes late, at 12:05 A.M. on December 1, 2020.

---

[7] The Third Circuit, for instance, has held that a "vulnerability-to-suicide" claim accrues when the jail official acts with deliberate indifference towards the plaintiff's risk of self-harm, not necessarily when the plaintiff dies. *Mullin v. Balicki*, 875 F.3d 140, 159 (3d Cir. 2017) ("The accrual of the claim is not tied solely to the prisoner's suicide itself, but also to the unconstitutional act by the prison official that gives rise to the claim.").

We can find no tolling provision in Texas law for close calls. *See, e.g.*, *Fisher v. Westmont Hosp.*, 935 S.W.2d 222, 226 (Tex. App. – Houston 1996); *see also United States v. Locke*, 471 U.S. 84, 101 (1985) ("If 1-day late filings are acceptable, 10-day late filings might be equally acceptable. . . . Filing deadlines, like statutes of limitations, necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if the concept of a filing deadline is to have any content, the deadline must be enforced."). The district court was correct in determining that, on the face of the petition, the Officer Suit was barred by Texas's statute of limitations.

## IV. Conclusion

The two cases in this appeal are each a procedural tangle. To summarize our holding: In the City Suit, we find no error in the district court's dismissal of the petition on the grounds of failure to adequately plead *Monell* liability. However, the district court did err in concluding that there is no constitutional right to protection from self-harm while in custody, and it further abused its discretion in denying leave to amend in the Estate's post-judgment motion to state claims of deliberate indifference to this right on behalf of the jailer, Cynthia Jimenez. We therefore REVERSE the district court's order denying the Estate's request for leave to amend in its Rule 59(e) motion and REMAND for amendment and further proceedings in that case. In the Officer Suit, we AFFIRM the district court's judgment dismissing the case as barred by Texas's two-year statute of limitations.